LANTRY & SONS, APPELLANTS, v. VICTOR SILVERMAN, APPELLEE.

1. INJURIES TO SERVANT RESULTING FROM NEGLIGENCE OF VICE-PRINCIPAL.—One in the employ of a master, but having full control and management of a department of the latter's business, including the servants employed therein, occupies the position of vice-principal, and the master is liable for injuries to a servant caused by the negligenc of such vice-principal.

2. CONTRIBUTORY NEGLIGENCE A QUESTION FOR JURY.—The defense of contributory negligence being interposed to an action for injury to a servant, alleged to have resulted through the negligence of the person put in charge by the master, it is peculiarly the function of the jury to determine from the evidence whether the plaintiff was acting as a reasonably prudent man would have done under like circumstances at the time of receiving the injury. And their finding on such a question, when supported by evidence, will not be disturbed by reason of mere preponderance of evidence to the contrary.

*Appeal from District Court of Arapahoe County.*

Mr. L. C. ROCKWELL, Messrs. HURD & DUNLAP and Mr. EUGENE HAGAN, for appellants.

Messrs. BRYANT & LEE and Mr. C. H. PIERCE, for appellee.

BISSELL, J.   Silverman was hurt in a quarry operated by the firm of Lantry & Sons, and brought this suit against them to recover damages for his injuries.   The facts are simple and the law applicable to them tolerably plain.   In January, 1890, Silverman obtained employment by the firm through an employment agency in Denver.   Lantry & Sons were then engaged in constructing a portion of the railroad up Pike's Peak, and Silverman went there under his engagement.   He was a blacksmith by trade, and apparently hired out as such, and was set to work in the shop sharpening tools used in the construction of the grade.   He seemed to have some difficulty in adapting himself to that particular sort of labor, and was relieved from the job and sent up the canon to a quarry which the firm was operating, with a note to Turnbull who had charge of the work.   He reported to Turnbull and was set to work as a blacksmith, but the bulk of his time was spent in the quarry, doing whatever he might be directed.   This fact is unimportant except in view of one or two instructions given by the court.   While he was laboring in the quarry with Turnbull and Maher, a co-employee, attempting to dislodge a large slab from its bed and tumble it to the place of its delivery, where it could be properly handled, he was directed by Turnbull to go a short distance down the ledge and remove some tools on which the slab was liable to fall.   He obeyed the order and started back.   There is some controversy as to what Silverman did while executing the order.   He contended that he threw the tools away and started directly up, going but a short distance from where they were, while the defense contend that he went twenty or thirty feet from the spot where the tools were, and was in a place of safety when he started back and put himself in a position of danger.   In the view which the court takes of the case and the law governing it, this difference is of slight importance.   Turnbull was in charge

of the quarry, and, according to the evidence, in full control of its operations and of the men who were at work there. He had the power to discharge the employees if their services were unsatisfactory or not needful to the operation of the work. While perhaps in one sense he was not the general superintendent of all the operations of the firm, he seemed to have full power of management and control at the quarry.

The case was submitted to the jury, who found a verdict for the plaintiff. The errors insisted upon, present in some of their phases, the law governing the liability of the master for injuries to the servant, when they are received in the course of his employment. It would serve no useful purpose to quote the instructions or to present an abstract of them. On one branch of the inquiry it is enough to say that the witnesses were not agreed as to the terms of the original hiring, or as to the circumstances under which Silverman's work was changed from that of a blacksmith to that of an ordinary laborer in the quarry. Whether the work in a quarry was more hazardous or dangerous than that of a smith was not very apparent. Still there was enough in the case to justify an instruction on the subject, and the rule which the court laid down was an accurate and lucid expression of the law, which could not have worked injury to the appellants. Error may not be predicated upon it.

On the main inquiry, whether Silverman is debarred recovery because the injury was occasioned by reason of his own carelessness, the case is not free from difficulty. This difficulty scarcely extends to the question of the responsibility of a master for the negligence of a co-servant, since Turnbull occupied no such position. Under the circumstances and the rule enunciated by the Supreme Court in *Denver S. P. & P. R. R. Co v. Driscoll*, 12 Colo. 520, the master is liable for the injury to the servant, if Turnbull's negligence was its proximate cause. He was clearly a vice-principal. He was in full control and management of the operations of the quarry at the time Silverman got hurt. The servant

was then acting in obedience to orders issued by a person possessing ample authority to give them, and executed under circumstances which justified their obedience. Whether the act of Turnbull, or that of Silverman's co-employee, Maher, caused the injury was peculiarly a question for the jury. It was decided adversely to the appellants. This tribunal cannot interfere with that finding, since there was evidence to support it. It is well settled in courts of this state that no verdict will be disturbed on a simple question of weight or preponderance of testimony. The only substantial difficulty is that presented by the proof which tended to establish contributory negligence on the part of Silverman. He was in a place of safety after he had removed the tools according to Turnbull's order and prior to the point of time when he started back. It will be recollected that Maher and Silverman were engaged in dislodging this slab, and were evidently being assisted by Turnbull. The thing to be done was to tumble the slab over the ledge. It was expected to fall where the tools were. In going down it would not fall directly, but probably slide along a pile of débris at the base of the ledge, and lie on the flat surface. The parties continued their work after Silverman started for the tools, and were at work when he started back. If he had remained where he was, or waited for the slab to tumble, or kept out of the way, he would not have been injured, since it was by the tumbling of the slab and its sheer to one side that he was caught. It is urged with great force and considerable show of reason that it was negligence for Silverman to attempt to return to the place where he had been at work in the face of the impending danger. But this court is disinclined to interfere with the finding of the jury upon this question, since it is peculiarly their function to determine what a reasonably prudent man would do under certain circumstances. Silverman had been at work assisting in the dislodgment of the rock, and was apparently expected to return to the top of the ledge and continue his labors. The jury may very naturally have concluded that he had a right

to expect that the rock would not be tumbled until his return, or they may have concluded that the condition of the work at the time that he was sent down was such that a reasonably cautious man would have done precisely what he did, attempt to return to continue his labor.  Evidently they considered that his return was not the act of an imprudent man, and that he did only that which an ordinarily cautious man would do under like circumstances.  Under well settled rules this court cannot disturb that verdict.  The question was submitted to the jury under instructions which stated the law upon this subject, and the record discloses nothing which would authorize an interference with their conclusion.

Perceiving no error in the record warranting a reversal, the judgment will be affirmed.

*Affirmed.*